## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | |
|---|---|
| JMJ FLORIDA HOLDINGS LLC, a Florida limited liability company; KEVIN McGAHARAN, an individual; and JODI McGAHARAN, an individual; | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| GIGI'S CUPCAKES, LLC, a Texas limited liability company; KEYCORP, LLC, a Delaware limited liability company; GIGI HOLDINGS, LLC, a Delaware limited liability company; GIGI'S FRANCHISING, LLC; a Tennessee limited liability company; GIGI'S OPERATING, LLC, a Delaware limited liability company; FUNDCORP, INC., a Delaware limited liability company; FOOD BUSINESS SERVICES, LLC, a Delaware limited liability company; SOVRANO, LLC, a Delaware limited liability company; ALAN THOMPSON, an individual; and GINA BUTLER, an individual. | ) ) ) ) ) ) ) ) ) **Civil Action No. _____** ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

---

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

---

Plaintiffs JMJ Florida Holdings LLC, a Florida limited liability company, ("JMJ"),

Kevin McGaharan ("Dr. McGaharan") and Jodi McGaharan ("Ms. McGaharan"), by and

through their undersigned counsel, hereby submit the following Original Complaint (the "Complaint").

## I. PARTIES

1.  Plaintiff JMJ Florida Holdings, LLC ("JMJ") is a Florida limited liability company with its principal place of business in the State of Florida.

2.  Plaintiff Kevin McGaharan ("Dr. McGaharan") is an individual residing within the State of Florida.

3.  Plaintiff Jodi McGaharan ("Mrs. McGaharan") is an individual residing within the State of Florida.

4.  Defendant Gigi's Cupcakes, LLC ("Current Franchisor") is a Texas limited liability company with its principal office address located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

5.  Defendant KeyCorp, LLC ("KeyCorp") is a Delaware limited liability company with its principal place of business in the State of Texas.

6.  Defendant Gigi's Holdings, LLC ("Gigi's Holdings") is a Delaware limited liability company registered in the state of Texas and, upon information and belief, has a principal place of business in the State of Texas.

7.  Defendant Gigi's Franchising, LLC ("Prior Franchisor") is a Tennessee limited liability company with its principal place of business in the State of Tennessee. Upon information and belief, Gigi's Franchising, LLC has dissolved.

8.      Defendant Gigi's Operating, LLC ("Gigi's Operating") is a Delaware limited liability company and, upon information and belief, has a principal place of business in the State of Texas.

9.      Defendant FundCorp, Inc. ("FundCorp") is a Delaware corporation with, upon information and belief, a principal place of business in the State of Texas.

10.     Defendant Food Business Services, LLC ("FBS") is a Delaware limited liability company with, upon information and belief, a principal place of business in the State of Texas.

11.     Defendant Sovrano, LLC, ("Sovrano") is a Delaware limited liability company with, upon information and belief, a principal place of business in the State of Texas.

12.     Upon information and belief, Defendant Alan Thompson ("Thompson") is a resident of the State of Tennessee.

13.     Upon information and belief, Defendant Gina Butler ("Gigi") is a resident of the State of Tennessee.

## II. **JURISDICTION AND VENUE**

14.     The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332 as complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

15.     Venue is proper pursuant to the United Franchise Agreement ("UFA") at ¶ 20.3.3, (**Exhibit C**), according to which the parties agreed to litigate any disputes arising from the UFA in the Franchisor's principal place of business. While Plaintiffs do not concede as much, Defendants have argued in a related case—and the Court has ruled—that venue under the UFA is proper in Texas.

16.     The Court has personal jurisdiction over Defendant Gigi's Cupcakes, LLC as it is a Texas limited liability company with a principal office address of 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

17.     The Court has personal jurisdiction over Defendant KeyCorp, LLC as its principal place of business is in the State of Texas.

18.     The Court has personal jurisdiction over Defendant Gigi's Holdings, LLC ("Gigi's Holdings") as it is a limited liability company registered in the state of Texas and, upon information and belief, has a principal place of business in the State of Texas.

19.     The Court has personal jurisdiction over Defendant Gigi's Franchising, LLC as Gigi's Franchising, LLC purposefully availed itself of Texas courts' jurisdiction and waived any objections thereto.

20.     The Court has personal jurisdiction over Defendant Gigi's Operating, LLC as it has a principal place of business in the State of Texas and does business therein.

21.     The Court has personal jurisdiction over Defendant FundCorp, Inc. as it has a principal place of business in the State of Texas.

22. The Court has personal jurisdiction over Defendant Food Business Services, LLC as it has a principal place of business in the State of Texas and does business therein.

23. The Court has personal jurisdiction over Sovrano, LLC as it has a place of business in the State of Texas and does business therein.

24. The Court has personal jurisdiction over Defendant Alan Thompson as he conducts business in the State of Texas and purposefully availed himself of the forum jurisdiction.

25. The Court has personal jurisdiction over Defendant Gina Butler as she conducts business in the State of Texas and purposefully availed herself of the forum jurisdiction.

### III.  GENERAL ALLEGATIONS

**A.**  **TENNESSEE DEFENDANTS MISREPRESENT PAST AND PRESENT PERFORMANCES OF THE FRANCHISE SYSTEM REGARDING GIGI'S CUPCAKES TO INDUCE PLAINTIFFS TO ENTER INTO THE UFA.**

26. In approximately 2009, one of the McGaharan's daughters was recruited to work in North Carolina.  When Mrs. McGaharan visited her daughter, she was told that there was a "great" cupcake place called "Gigi's."  The two of them went there and for a few years thereafter would and regularly eat cupcakes at Gigi's whenever Mrs. McGaharan visited her daughter in North Carolina.

27.  In 2012, the McGaharans were looking for a business opportunity that would bring their daughter home to Florida. They wanted to build something the whole family could grow together.

28.  In their quest for such an opportunity, over the next few months, the McGaharans researched Gigi's, its business model, and how the franchise operated. The McGaharans researched Prior Franchisor, Gina Butler and Alan Thompson. Online information regarding these Defendants indicated that Defendants Gigi and Thompson had solid experience in the food industry. Everywhere they turned, public information about the company depicted it as on the move, in full growth, with rising popularity, and a solid business structure. The McGaharans also spoke to other owners about their experiences.

29.  The McGaharans, by then, had saved money over the course of their entire careers. While life had not always been easy—Dr. McGaharan suffered a debilitating stroke at 34 and Mrs. McGaharan suffered a sudden cardiac death and heart attack at 45—they had been able to eventually turn things around. Their savings had been accumulated despite these serious setbacks and the demands of raising six children.  They were now looking at a Gigi's franchise as an opportunity to invest in their retirement and see the fruits of their labor.  They wanted to build a business that their children would be able to work in and grow.

30.  The McGaharans received the Franchise Disclosure Document (the "FDD") originally issued on May 31, 2012 and amended on August 22, 2012.  **Exhibit D**.

31.   Upon information and belief, the FDD was created, read, and approved by Gigi and Thompson.

32.   Unbeknownst to the McGaharans, the FDD provided to them by Prior Franchisor intentionally and materially misrepresented the past, present, and future viability of the franchise's business model at the time it was presented to the McGaharans. Further, Prior Franchisor fraudulently concealed material depicting negative aspects of the franchise's business model.

33.   Specifically, and upon information and belief, Item 19 of the FDD contained a table showing net sales, cost of goods sold ("COGS"), labor, location expenses, operating expenses, and earnings before interest, depreciation, taxes, and amortization ("EBITDA") values for affiliate stores—not franchised stores—which, *inter alia*, understated the cost of labor by at least 20-33% by not taking into account reasonable salaries paid to franchise owners who work at the store.  In other words, the figures represented in the FDD assumed that owners who work in the store either work for free or take an unreasonably small salary.

34.   Next, and upon information and belief, the net sales and COGS figures used in the two tables in Item 19 of the FDD are falsified and materially understated by at least 20-33%.

35.   Even assuming Prior Franchisor's figures in Item 19 are accurate calculations, upon information and belief, the figures used in the tables are misleading because

Prior Franchisor "cherry picked" the best performing stores rather than using a more representative sample.

36.   Upon information and belief, some of the stores used in the Item 19 calculation are corporate-owned franchise stores that do not pay royalties, thereby further skewing the data.

37.   Upon information and belief, no total or average labor costs, COGS, operating expenses, EBITDA figures for all franchised stores appear in Item 19 of the First FDD.

38.   The intent of these misrepresentations and omissions by Prior Franchisor was to induce Plaintiffs to execute a UFA with Prior Franchisor by painting a portrait of profitability that was far in excess of what prospective franchisees such as the Plaintiffs could reasonably expect to attain under the Gigi's Cupcakes business model.

39.   As further indication of Prior Franchisor's fraudulent scheme, on October 18, 2016, KeyCorp, the parent corporation which ultimately acquired Prior Franchisor, initiated a lawsuit against Gigi's Holdings and Gigi's Franchising[1] (attached hereto and incorporated herein as **Exhibit A**) asserting, *inter alia*, that Prior Franchisor misrepresented the economic health of the franchise system—Prior Franchisor had represented to KeyCorp that only five stores had threatened to

---

[1] *KeyCorp, LLC v. Gigi's Holdings, LLC, et al.*, Plaintiff's Original Complaint, Case No.: 3:16-cv-02930-L (N.D. Tex.)

close or withdraw from the franchise system, but in reality the number was 32 stores. (*See* **Exhibit A**, ¶ 25).[2]

40.    As inferred from **Exhibit A**, the number of stores KeyCorp stated as having threatened to close or withdraw from the franchise system is a significantly large percentage of the total number of Gigi's Cupcakes franchises in operation and indicates the financial viability of the Gigi's Cupcakes business model was, from the beginning, not as advertised to Plaintiffs.

41.    If Plaintiffs had known the true state of affairs of the Gigi's Cupcakes franchise system, Plaintiffs would have elected to not execute an UFA in the first place.

42.    Plaintiffs, without knowledge of the falsity of the information in the FDD, did indeed rely upon the financial representations made in Item 19 of the FDD and the FDD itself when making their decision to enter into a UFA.

**B.    DESPITE PLAINTIFFS' BEST EFFORTS, THE FRANCHISE IS UNSUCCESSFUL, PERMANENTLY FINANCIALLY DEVASTATING THEM.**

43.    In September 2013, Plaintiffs opened their franchise. To do so, Plaintiffs did not borrow any money. They used their savings and paid everything in cash which totaled approximately $200,000. The expenses were largely driven by Prior Franchisor's, Gigi and Thompson's expensive and unnecessary demands.

---

[2] **Exhibit A** is attached hereto and incorporated herein.

44.     Prior Franchisor directed Plaintiffs to spend money on radio advertising, on a "Big Opening," trainings, and on giveaway prizes around the community. Prior Franchisor also directed Plaintiffs to hire over 15 people, which would then get trained by Prior Franchisor.

45.     Plaintiffs' projections for their first year, based on Gigi's numbers, reflected a revenue of $750,000 / year. Plaintiffs did not know just how misleading Gigi's numbers were.

46.     In the first few months, the franchise was marginally successful.  However, a significant portion of its revenue was being spent on advertising and personnel that Prior Franchisor insisted Plaintiffs use, which were not needed by the franchise. In other words, even when business was good, Prior Franchisor made it hard for Plaintiffs' franchise to survive.

47.     After the first few months, Plaintiffs' sales numbers started to sink. Prior Franchisor sent employees to assess the situation. Their advice was to open a new kiosk in the mall across the street. The McGaharans were surprised by this advice. It seemed bad business to open a new location, requiring more financial outlays and additional marketing, if they could not make the current one work.

48.     On another occasion, Gigi told the McGaharans they should open a location at St. Armand's Circle because it was Gigi's "favorite vacation location." The McGaharans were baffled by this. St. Armand Circle was a seasonal vacation

location, not conducive to year-round business. The McGaharans declined Gigi's bad business advice.

49.   In the meantime, Plaintiffs poured their hearts and souls into their franchise. The first year Plaintiffs lost approximately $75,000. The second year, Plaintiffs lost a little less but were still in the red. The McGaharans never drew a salary and were spending their own money to support the company, trying to salvage their investment, and (unbeknownst to them) floating Prior Franchisor. Eventually, Mrs. McGaharan sat with the numbers and realized that the franchise would never be profitable due to all of the demands that Prior Franchisor was making of them.

50.   Prior Franchisor, Gigi and Thompson imposed advertising costs and forced Plaintiffs to purchase ingredients from particular suppliers.

51.   Prior Franchisor, Gigi, and Thompson also forced Plaintiffs to change their menu every three (3) months. In order to meet these demands, Plaintiffs had to buy different ingredients every three (3) months and had to order minimum quantities of those ingredients. As a result, every three (3) months Plaintiffs were left with ingredients that would eventually go to waste.

52.   Plaintiffs felt they were in a trap that was destroying their life's work and drying up all of their financial resources.

53.   In the summer of 2016, desperate, Plaintiffs contacted Thompson and Prior Franchisor, including one of its employees, Michael Skelton. Dr. McGaharan

explained that they needed to sell the franchise and that they had it listed for sale. The conversation was uneventful.

54.   In October 2016, Plaintiffs had a follow-up call with Prior Franchisor regarding their need to sell the franchise. During that call though, Plaintiffs also confronted Prior Franchisor with the fact that another store was opening in St. Armand Circle. The couple opening that location were Mr. and Mrs. Rubinstein (the "Rubinsteins"). Plaintiffs were upset that they had been kept from these new purchasers and had not been given an opportunity to sell their own store to them.

55.   The tone of the call soured. Prior Franchisor responded by threatening the McGaharans with litigation and promised the McGaharans that they *"would be paying for the next ten years"* if they tried to sell the store. Prior Franchisor then told the McGaharans that they would be *"in bigger trouble than they could even imagine"* if they sold their store.

56.   Prior Franchisor, Gigi, and Thompson knew exactly what they were doing. In fact, Plaintiffs later found out that Mr. and Mrs. Rubinstein, at the time, would have paid Plaintiffs at least $200,000 for their store.  Also, Plaintiffs subsequently learned that Prior Franchisor, Gigi and Thompson had actively impugned them with the Rubinsteins and played interference so that Plaintiffs and the Rubinsteins would not communicate.

57.   At the time, Plaintiffs had their business listed for $50,000.

58.  The store continued to lose money month after month due to the many demands of Prior Franchisor.

59.  Plaintiffs' realtor suggested that Plaintiffs try to sell to the Rubinsteins.  Plaintiffs agreed and began discussing the sale with them. The conversations were somewhat fruitful.

60.  Plaintiffs sold the store to the Rubinsteins, including all ingredients, for under $40,000.

61.  During their attempts to build the franchise, the McGaharans liquidated $600,000-$650,000 from their retirement funds, received $300,000 as an inheritance from Dr. McGaharan's mother, and had $200,000 in savings.  All of that money is now gone and the McGaharans had to open a credit card which still carries a balance. In addition, Dr. McGaharan had to come out of retirement to go back to working full time.

62.  The McGaharans are now trying to sell their home, the home in which they have resided for seventeen (17) years, but will in all likelihood, lose it because they can no longer afford it. They have no savings, no safety net, and are working when they should be retired.

63.  In no uncertain terms, Defendants devastated the McGaharan family and laid to waste a lifetime of work.

C.   **KEYCORP PURCHASES PRIOR FRANCHISOR AND THE FRAUDULENT TRANSFERS CONTINUE.**

64.   Upon information and belief, on or about May 3, 2016, KeyCorp, Gigi's Holdings, and Prior Franchisor entered into an Asset Purchase Agreement in which substantially all of the UFAs entered into by Prior Franchisor were assigned to KeyCorp without novation.

65.   As articulated above, KeyCorp filed a complaint in this very Court against Gigi's Holdings and Prior Franchisor on October 18, 2016 (*see* **Exhibit A**).

66.   According to KeyCorp itself, in Paragraph 7 on page 2 of **Exhibit A**, KeyCorp was the entity that purchased the assets from Gigi's Holdings and Prior Franchisor in exchange for $6 million.

67.   Upon information and belief, KeyCorp had not previously had any experience operating a bakery franchise and possessed none of the economy of experience enjoyed by Prior Franchisor.

68.   In Paragraph 8 of **Exhibit A**, KeyCorp alleged "[i]n the months prior to closing [the] transaction, KeyCorp expended hundreds of thousands of dollars in conducting its legal and business due diligence.  This process took several months and required KeyCorp to retain additional management personnel and industry experts and advisors."

69.   KeyCorp's lawsuit against Gigi's Holdings and Prior Franchisor was settled shortly after the Complaint was filed.

70.   KeyCorp and Prior Franchisor discovered and were aware of the fraud and other wrongdoings committed against Plaintiffs.

71.   KeyCorp and Gigi's Cupcakes, LLC decided to perpetuate the fraud and other wrongdoings committed against Plaintiffs.

72.   Keycorp and Gigi's Cupcakes, LLC are therefore specifically liable for Prior Franchisor, Gigi, and Thompson's fraud because they had notice of that fraud at or before executing the Asset Purchase Agreement.

73.   Thompson and Gigi, the senior management of Prior Franchisor, were hired by KeyCorp and continue to work for KeyCorp.

74.   Upon information and belief, Gigi and Thompson acquired an ownership interest in Gigi's Cupcakes, LLC after the Asset Purchase Agreement, evidenced by their continuing presence and influence over operation of the Gigi's franchise system.

75.   Both Prior Franchisor and Gigi's Holdings legally dissolved after the execution of the Asset Purchase Agreement.

76.   Upon information and belief, in the Asset Purchase Agreement, KeyCorp acquired Prior Franchisor's current liabilities, accounts payable, and contracts, including its UFAs, and continues to enforce and benefit from those contracts. Gigi's Cupcakes, LLC and KeyCorp thereby assumed Prior Franchisor's liabilities to the extent necessary for the uninterrupted continuation of the Prior Franchisor's business.

77.    Gigi's Cupcakes, LLC and KeyCorp therefore assumed all of Prior Franchisor's liabilities under the "de facto merger" or "mere continuation" theories of successor liability.

78.    Upon information and belief, once Prior Franchisor's assets were purchased by KeyCorp, the assets were transferred to one or more shell companies (*i.e.* Gigi's Cupcakes, LLC and/or Gigi's Operating) wholly-owned by KeyCorp in exchange for stock of little to no value for the express and intentional purpose of hindering any future attempts by Plaintiffs to recover from the appropriate party or to defraud Plaintiffs.

79.    Thereafter, Gigi's Cupcakes, LLC took over the operations of Prior Franchisor and incorrectly held itself out to Plaintiffs to be the direct successor of the Prior Franchisor.

80.    Gigi's Cupcakes, LLC then paid FundCorp a $500,000 "loan fee" in exchange for FundCorp agreeing to guarantee Gigi's Cupcakes, LLC's debts.  Upon information and belief, FundCorp is a wholly-owned subsidiary of KeyCorp.

81.    Since the sale of Prior Franchisor, Gigi's Cupcakes, LLC also leased property from FundCorp for approximately $100,000 per year.

82.    Since the sale of Prior Franchisor, Gigi's Cupcakes, LLC also paid, and continues to pay, KeyCorp $15,000 per month for "performing management services."

83.  Gigi's Cupcakes, LLC also paid FBS approximately $783,000 between June 2, 2016 and December 25, 2016 for "general and administrative services including payroll services."   Upon information and belief, FBS is a wholly-owned subsidiary of KeyCorp, and Gigi's Cupcakes, LLC continues to pay FBS at a rate of approximately $1.4 million per year.

84.  Further, Sovrano, which upon information and belief is also a wholly-owned subsidiary of KeyCorp, made payments to FBS "on behalf of" Gigi's Cupcakes, LLC for alleged services and rent that FBS provided to Gigi's Cupcakes, LLC, which Gigi's Cupcakes, LLC recorded as a debt to Sovrano.

85.  On or about December 25, 2016, Gigi's Cupcakes, LLC was operationally insolvent by at least $360,000, and upon information and belief, Gigi's Cupcakes, LLC continues to be unable to meet its financial obligations.

86.  On or about December 25, 2016, Gigi's Cupcakes, LLC's audited financial statements declared that "[Plaintiff] has sustained losses from operations during the period June 2, 2016 through December 25, 2016.  [Gigi's Cupcakes, LLC] ability to meet its obligations in the ordinary course of business depends upon its ability to generate positive cash flows.  Management plans to meet its obligations in the ordinary course of business by collecting revenue and utilizing its existing debt financing.  If these sources of cash do not adequately fund current levels of operations of the Company, management will adjust the level of operations and cash expenditures to an internally sustainable level."

87.   In Gigi's Cupcakes, LLC 's most recent FDD filed with the State of Minnesota, as amended on June 9, 2017, Gigi's Cupcakes, LLC admitted that "[GIGI'S CUPCAKES, LLC'S] FINANCIAL CONDITION, AS REFLECTED IN ITS FINANCIAL STATEMENTS (SEE ITEM 21), CALLS INTO QUESTION THE [GIGI'S CUPCAKES, LLC'S] FINANCIAL ABILITY TO PROVIDE SERVICES AND SUPPORT TO [THE FRANCHISEE]." (Emphasis in original).

88.   Gigi's Cupcakes, LLC does not provide their updated FDDs to existing franchisees, and the FDDs are not easily obtainable by the public.  Plaintiffs did not have actual or constructive knowledge that Gigi's Cupcakes, LLC was insolvent prior to this litigation.

89.   Upon information and belief, despite knowing that Gigi's Cupcakes, LLC was insolvent, KeyCorp, FundCorp, Sovrano, and FBS were attempting to extract as much value from Gigi's Cupcakes, LLC as possible to pay the insiders of KeyCorp; when the scheme became financially unsustainable, Gigi's Cupcakes, LLC attempted to offset the payments it was making to KeyCorp, FundCorp, and FBS by extracting more money from Plaintiffs and other franchisees in the form of kickbacks and markups from the franchise system's food distributors Plaintiffs were required to use (described below).

D.  **PLAINTIFFS INITIATE DISPUTE RESOLUTION PROCEDURES AND GIGI'S CUPCAKES, LLC NEGOTIATES IN BAD FAITH BY NOT DISCLOSING ITS OWN CONTINUING INSOLVENCY.**

90.  Pursuant to a dispute resolution process in the UFA, counsel for Plaintiffs sent a letter to Gigi's Cupcakes, LLC on or about July 27, 2017, demanding mediation regarding the various issues described in this Original Complaint and Jury Demand.

91.  Pursuant to the UFA, a mediation between Gigi's Cupcakes, LLC, Plaintiffs, and other franchisees was held in Tennessee on October 23, 2017.

92.  Though on October 23, 2017, Gigi's Cupcakes, LLC was likely insolvent, this significant and important fact was never disclosed to Plaintiffs or other franchisees, which would have materially affected Plaintiffs' negotiating position.

93.  Gigi's Cupcakes, LLC also attempted to convince Plaintiffs that KeyCorp was not an important factor in the resolution of Plaintiffs' claims.

E.  **A&M FUND USED TO RUN THE INSOLVENT COMPANY.**

94.  According to Section 8 of the UFA, Plaintiff JMJ was required to contribute 3% of its "Gross Business Volume" to Franchisor for inclusion in an Advertising and Marketing Fund (the "A&M Fund").

95.  JMJ paid 3% of Gross Business Volume monthly to Franchisor for inclusion in the A&M Fund for all months it remained in operation.

96.     According to Section 8.1 of the UFA, Franchisor or its designee was required to "exclusively maintain and administer any program Gigi's shall undertake for national and/or regional and/or local advertising, public relations, marketing and market research . . ."

97.     According to Section 8.5 of the UFA, "[n]o part of the A&M Fund shall be used by Franchisor to defray any of its general operating expenses other than those reasonably allocable to the A&M Program or other activities as are reasonably related to the administration or direction of the A&M Program."

98.     Plaintiffs have not seen nor heard any national, regional, or local advertising for Gigi's Cupcakes that were paid for by Prior Franchisor or Gigi's Cupcakes, LLC's, with the exception of one television show of Undercover Boss involving a franchise of Gigi's Cupcakes which aired in or about February 2015.

99.     Upon information and belief, even if Prior Franchisor or Gigi's Cupcakes LLC had been spending the accumulated A&M Fund for advertising and marketing, such advertising and marketing was purchased only in Tennessee and Texas for the benefit of the corporate-owned stores rather than for franchisees in other states.

100.    Plaintiffs have heard of numerous instances in which other Gigi's Cupcakes franchisees requested an accounting of the A&M Fund to no avail.

101.   Given the general lack of visible national, regional, or local marketing paid for by Prior Franchisor or Gigi's Cupcakes, LLC, Plaintiffs believe Prior Franchisor and Gigi's Cupcakes, LLC have misappropriated the A&M Funds in contravention of the UFA and other applicable law.

F.   **TERMINATION AND RELEASE.**

102.   On February 7, 2017, Plaintiffs terminated the UFA via a Surrender of Rights and Mutual Release. **Exhibit B** (the "Termination Agreement").

103.   The Termination Agreement was entered into between Gigi's Cupcakes, LLC and Plaintiffs.

104.   The Termination Agreement was drafted and imposed by KeyCorp. Plaintiffs had no say in the matter. They were broke; Mrs. McGaharan's health was failing; she was in dire need of surgery; and their accounts were drained. Forced into a corner, Plaintiffs signed the Termination Agreement.

105.   The basis for the Termination Agreement was Plaintiffs' sale of the franchise to a third party, Icing on the Cupcake, LLC, owned by the Rubinsteins.

106.   In negotiating the price of its franchise, Plaintiffs relied upon representations made to them by various Defendants over the previous four (4) years.

107.   As of February 7, 2017, Plaintiffs did not know of their claims against Defendants as described in this Complaint.

108.   The Termination Agreement contains a release which does not encompass "unknown claims." As a result, none of the claims in this Complaint are covered by the release in the Termination Agreement.

**G.    APPLICABLE LAWS.**

109.   Pursuant to Section 20.1 of the UFA, the UFA states "any dispute between Franchisor and Franchisee shall be governed by and construed in accordance with the laws of the State of Tennessee (without regard to the application of Tennessee conflicts of law principles) and the United States of America." As a result, the laws of Tennessee govern the UFA.

110.   Pursuant to Section 12 of the Termination Agreement, "This Release will be governed by and interpreted under Texas law. The parties hereby consent and waive all objections to the non-exclusive personal jurisdiction of, and venue in, the United States District Court for the Northern District of Texas and the Texas state courts situated in Tarrant County, Texas for the purposes of all cases and controversies involving this Release and its enforcement, and the Franchise Agreement."

**H.    PIERCING THE CORPORATE VEIL.**

111.   Upon information and belief, Gigi's Cupcakes, LLC is a wholly-owned subsidiary of KeyCorp.

112.   Upon information and belief, KeyCorp completely controls the finances, policies, and business practices of Gigi's Cupcakes, LLC such that Gigi's Cupcakes, LLC has no separate will or existence of its own.

113.   KeyCorp used its control of Gigi's Cupcakes, LLC to commit, *inter alia*, the fraudulent transfers, breaches of contract and other wrongdoings discussed supra.

114.   Gigi's Cupcakes, LLC is currently insolvent and unable to satisfy its legal and financial obligations.

115.   KeyCorp's control of Gigi's Cupcakes, LLC proximately caused Plaintiffs' damages.

116.   Therefore, this Court should "pierce the corporate veil" and hold KeyCorp liable for all Gigi's Cupcakes, LLC's wrongdoings.

## IV.  PLAINTIFFS' CLAIMS

### FIRST CLAIM FOR RELIEF
### (Deceit Based on Fraud Against Prior Franchisor, Gigi, Thompson, Gigi's Cupcakes, LLC, and KeyCorp)

117.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

118.   Prior Franchisor, Gigi, and Thompson made material misrepresentations, *inter alia*, in Item 19 of the FDD provided to Plaintiffs prior to the execution of the UFA concerning the profitability and viability of a Gigi's Cupcakes business. Further,

Prior Franchisor, Gigi, and Thompson made material misrepresentations in the FDD regarding Prior Franchisor's financial health and operational solvency.

119. Prior Franchisor, Gigi, and Thompson's representations in Item 19 of the FDD provided to Plaintiffs concerning the profitability and viability of a Gigi's Cupcakes business and their representations concerning Prior Franchisor's financial health and operational solvency were false.

120. Prior Franchisor, Gigi, and Thompson knew that their representations concerning the profitability and viability of a Gigi's Cupcakes business and Prior Franchisors financial health and solvency were false, or, in the alternative, Prior Franchisor, Gigi, and Thompson made these representations recklessly without knowing whether they were true or false.

121. Prior Franchisor, Gigi, and Thompson intended for Plaintiffs to rely upon the misrepresentations in the FDD and execute the UFA in reliance on those misrepresentations.

122. Plaintiffs did not know that the misrepresentations in the FDD were false and were justified and reasonable in relying upon the truth of those representations when executing the UFA.

123. Plaintiffs sustained damages as a result of their reliance upon the truth of the representations in the FDD.

124.    Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior
Franchisor's fraud because they had notice of that fraud at or before the time they
acquired Prior Franchisor's assets.

125.    Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable
for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of Original
Complaint and Jury Demand.

## SECOND CLAIM FOR RELIEF
### (Fraud by Concealment/Omission Against Prior Franchisor, Gigi, Thompson, Gigi's Cupcakes, LLC, and KeyCorp)

126.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original
Complaint and Jury Demand as if fully set forth herein.

127.    Prior Franchisor, Gigi, and Thompson concealed and suppressed accurate
financial information on Item 19 of the FDD concerning the profitability and
viability of a Gigi's Cupcakes business. Further, Prior Franchisor, Gigi, and
Thompson concealed and suppressed accurate financial information in the FDD
concerning Prior Franchisor's financial health and operational solvency.

128.    Prior Franchisor, Gigi, and Thompson, by making misleading financial
representations in the FDD, had a duty to supplement those representations with
accurate financial information to the Plaintiffs.

129.   Prior Franchisor, Gigi, and Thompson, by making representations which became untrue or misleading had a duty to correct those representation with new information, which they failed to do.

130.   Prior Franchisor, Gigi, and Thompson, by making partial disclosures conveyed a false impression of their financial health and performance.

131.   Prior Franchisor, Gigi, and Thompson intentionally concealed or suppressed accurate financial information in the FDD with the intent to deceive the Plaintiffs.

132.   Plaintiffs were not aware of the accurate financial information that Prior Franchisor, Gigi, and Thompson failed to disclose in the FDD and would not have purchased a Gigi's Cupcakes franchise if they had known of the concealed and suppressed financial information. Plaintiffs would not have sold as they did, for the price they did, and when they did, had they known of the concealed and suppressed financial information.

133.   As a result of the concealment and suppression of this information, Plaintiffs suffered damages.

134.   Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior Franchisor's fraud because they had notice of that fraud at or before the time they acquired Prior Franchisor's assets.

135.   Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### THIRD CLAIM FOR RELIEF
**(Negligent Misrepresentation Against Prior Franchisor, Gigi's Cupcakes, LLC, KeyCorp, Gigi, and Thompson)**

136.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

137.   In the course of their business dealings as franchisors, Prior Franchisor, Gigi, and Thompson made material misrepresentations, *inter alia*, in Item 19 of the FDD provided to Plaintiffs prior to the execution of the UFA concerning the profitability and viability of a Gigi's Cupcakes business. Further, Prior Franchisor, Gigi, and Thompson made material representations in the FDD regarding Prior Franchisor's financial health and operational solvency, representations which were false.

138.   Prior Franchisor, Gigi, and Thompson failed to exercise reasonable care or competence in obtaining or communicating the information.

139.   Prior Franchisor, Gigi, and Thompson supplied false information for the guidance of Plaintiffs in their business.

140.   Prior Franchisor, Gigi, and Thompson's representations in Item 19 of the FDD provided to Plaintiffs concerning the profitability and viability of a Gigi's Cupcakes business were false. Further, Prior Franchisor, Gigi, and Thompson's representations in the FDD regarding Prior Franchisor's financial health and operational solvency were false.

141.   Prior Franchisor, Gigi, and Thompson failed to exercise reasonable care in communicating the information in the FDD concerning the profitability and viability of a Gigi's Cupcakes business and Prior Franchisor's financial health and operational solvency.

142.   Prior Franchisor, Gigi, and Thompson intended Plaintiffs to rely upon the misrepresentations in the FDD and execute the UFA in reliance on those misrepresentations.

143.   Plaintiffs did not know that the misrepresentations in the FDD were false and were justified in relying upon the truth of those representations when executing the UFA.

144.   Plaintiffs sustained damages as a result of their reliance upon the truth of the representations in the FDD.

145.   Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for Prior Franchisor's negligent misrepresentations because they had notice of those misrepresentations at or before the time they acquired Prior Franchisor's assets.

146.   Additionally, Gigi's Cupcakes, LLC and KeyCorp are jointly and severally liable for all Prior Franchisor's wrongdoings as corporate successors.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract Against Gigi's Cupcakes, LLC)**

147.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

148.   Plaintiffs' UFA states, *inter alia*, that the parties shall resolve disputes through good faith negotiations and, if negotiations fail, by good faith mediation.

149.   Gigi's Cupcakes, LLC and Plaintiffs engaged in mediation, and that process failed to resolve their disputes.

150.   Defendants failed to discuss or mention their insolvency with Plaintiffs during the mediation. Further, Defendants insisted KeyCorp was not involved with Plaintiffs' operations or its disputes with Defendants and other franchisees when in fact, KeyCorp is an important party to those disputes.

151.    Based on these actions, Gigi's Cupcakes, LLC failed to negotiate or mediate with

        Plaintiffs in good faith.

152.    Plaintiffs suffered damages as a result of Gigi's Cupcakes, LLC's breach.

        WHEREFORE Plaintiffs pray for the relief described at the conclusion of this
Original Complaint and Jury Demand.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract against Prior Franchisor)

153.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

        Complaint and Jury Demand as if fully set forth herein.

154.    Plaintiffs and Prior Franchisor entered into the UFA on January 20, 2014, and the

        UFA required Plaintiffs to contribute 3% of its "Gross Business Volume" to

        Franchisor for inclusion in the A&M Fund.

155.    Plaintiffs paid 3% of its "Gross Business Volume" to Prior Franchisor in

        accordance with the UFA for all months Plaintiffs remained in operation.

156.    The UFA also states that Franchisor or its designee must "exclusively maintain and

        administer any program Gigi's shall undertake for national and/or regional

        and/or local advertising, public relations, marketing and market research . . ." and

        that "[n]o part of the A&M Fund shall be used by Franchisor to defray any of its

        general operating expenses other than those reasonably allocable to the A&M

Program or other activities as are reasonably related to the administration or direction of the A&M Program."

157.    Prior Franchisor breached these provisions of the UFA, *inter alia*, by failing to consistently or substantially provide national, regional, or local advertising for Gigi's Cupcakes and by, upon information and belief, using the A&M Fund to defray general operating expenses.

158.    Plaintiffs suffered damages because of Prior Franchisor's breaches of the contract.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SIXTH CLAIM FOR RELIEF
**(Breach of Contract against Gigi's Cupcakes, LLC)**

159.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

160.    Plaintiffs and Prior Franchisor entered into a UFA on January 23, 2013, which required Plaintiffs to contribute 3% of its "Gross Business Volume" to Franchisor for inclusion in the A&M Fund.

161.    Plaintiffs paid 3% of its "Gross Business Volume" to Gigi's Cupcakes, LLC in accordance with the UFA for all months Plaintiffs remained in operation after KeyCorp and Gigi's Cupcakes, LLC took over the assets of Prior Franchisor.

162.    The UFA also states that Franchisor or its designee must "exclusively maintain and administer any program Gigi's shall undertake for national and/or regional and/or local advertising, public relations, marketing and market research . . ." and that "[n]o part of the A&M Fund shall be used by Franchisor to defray any of its general operating expenses other than those reasonably allocable to the A&M Program or other activities as are reasonably related to the administration or direction of the A&M Program."

163.    Gigi's Cupcakes, LLC breached these provisions, *inter alia*, of the UFA by failing to consistently or substantially provide national, regional, or local advertising for Gigi's Cupcakes and, upon information and belief, by using the A&M Fund to defray general operating expenses.

164.    Plaintiffs suffered damages because of Gigi's Cupcakes, LLC's breaches of the contract.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SEVENTH CLAIM FOR RELIEF
### (Civil Conspiracy against all Defendants)

165.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

166.    Defendants are two or more persons.

167.  There was an object to be accomplished, *to wit,* selling franchises to Plaintiffs and collecting fees, proceeds from supplies, and royalties therefrom.

168.  Defendants had a meeting of the minds on the object or course of action, as follows.

169.  Gigi's Cupcakes, LLC and KeyCorp had notice of Prior Franchisor, Gigi, and Thompson's fraudulent misrepresentations. Gigi's Cupcakes, LLC and KeyCorp went on to hire Gigi, Thompson, and other key members of Prior Franchisor's management team to assist in operating the Gigi's franchise system.

170.  Gigi's Cupcakes, LLC and KeyCorp knew of Prior Franchisor, Gigi, and Thompson's fraudulent misrepresentations at or before the time KeyCorp executed the Asset Purchase Agreement

171.  Upon information and belief, at or before the execution of the Asset Purchase Agreement, Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi, Thompson, FundCorp, FBS, and Sovrano agreed to perpetuate and benefit from the fraudulently-induced UFA. Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano thereby entered into a common design to perpetuate Prior Franchisor, Gigi, and Thompson's original fraud by concerted action.

172.  Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano perpetuated Prior Franchisor, Gigi, and

Thompson's original fraud by, *inter alia*, failing to amend, rescind, or renegotiate the UFA with Plaintiffs.

173.    Gigi's Cupcakes, LLC, KeyCorp, Prior Franchisor, Gigi's Holdings, Gigi, Thompson, FundCorp, FBS, and Sovrano's respective wrongdoings all caused Plaintiffs to suffer damages.

174.    Further, upon information and belief, Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano entered into a common design whereby Gigi's Cupcakes, LLC made payments to the other entities with the intent to hinder, delay, and defraud Plaintiffs of their claims.

175.    Defendants also knew or should have known that Gigi's Cupcakes, LLC payments rendered it unable to satisfy its debts to Plaintiffs.

176.    The above consisted of one or more unlawful, overt acts.

177.    Plaintiffs suffered damages as a proximate result of Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano's actions.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## EIGHTH CLAIM FOR RELIEF
**(Unjust Enrichment against Prior Franchisor)**

178.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

179.   Plaintiffs conferred benefits upon Prior Franchisor in the form of franchise fees and payments pursuant to the UFA.

180.   Prior Franchisor obtained the fees and payments by fraud, duress, or the taking of an undue advantage.

181.   Prior Franchisor appreciated Plaintiffs' payments thereby wrongly securing a benefit from Plaintiffs.

182.   Prior Franchisor's acceptance of these benefits is inequitable in light of the fact that it made material misrepresentations to Plaintiffs in the FDD prior to Plaintiffs' execution of the UFA.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## NINTH CLAIM FOR RELIEF
**(Unjust Enrichment against Gigi's Cupcakes, LLC and KeyCorp)**

183.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

184. Plaintiffs conferred benefits upon Gigi's Cupcakes, LLC and KeyCorp in the form of franchise fees and payments pursuant to the UFA.

185. Gigi's Cupcakes, LLC and KeyCorp obtained the fees and payments by fraud, duress, or the taking of an undue advantage.

186. Gigi's Cupcakes, LLC and KeyCorp appreciated Plaintiffs' payments thereby wrongly securing a benefit from Plaintiffs and Gigi's Cupcakes, LLC continues to operate the Gigi's franchise system and maintain its unsustainable business model.

187. Gigi's Cupcakes, LLC's and KeyCorp's acceptance of these benefits is inequitable in light of the fact that Gigi's Cupcakes, LLC and KeyCorp had notice of Prior Franchisor's misrepresentations in the FDD at or before the date KeyCorp acquired the assets of Prior Franchisor, continues to employ individuals responsible for those misrepresentations.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## TENTH CLAIM FOR RELIEF
### (Declaratory Judgment against Gigi's Cupcakes, LLC)

188. Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

189. Plaintiffs seek declaratory judgment that its claims, as described herein, were unknown to it at the time they signed the Termination Agreement.

190.    As a result, Plaintiffs seek declaratory judgment that the Termination Agreement is not applicable to their claims, as contained in the Original Complaint and Jury Demand, because the Termination Agreement did not release any of Defendants for any unknown claims of Plaintiffs.

191.    Plaintiffs also seek declaratory judgment that the Termination Agreement is null and void on the basis of fraud and fraudulent inducement.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### ELEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment against all Defendants)

192.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

193.    Plaintiffs respectfully request declaratory judgment to determine the respective rights between the parties relating to all matters set forth in the Original Complaint and Jury Demand.

194.    The rights that Plaintiffs assert are present and cognizable, and all relevant events have occurred.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

<u>**TWELFTH CLAIM FOR RELIEF**</u>
**(Fraudulent Transfer Against Prior Franchisor**
**Pursuant to Tennessee Code § 66-3-305)**

195.    Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original

Complaint and Jury Demand as if fully set forth herein.

196.    Prior Franchisor sustained losses from its operations in 2013 and 2014. Specifically,

Prior Franchisor recorded a net loss of $16,923 in 2013 and $647,655 in 2014. Upon

information and belief, Prior Franchisor sustained losses from its operations in 2015.

Gigi's Cupcakes, LLC's audited financial statements for the period of June 2, 2016

through December 25, 2016 show net losses of approximately $361,935.

197.    Upon information and belief, Prior Franchisor was therefore operationally insolvent

in 2013, when it entered into the UFA with Plaintiffs, through 2016.

198.    In the years 2013 through 2016, Prior Franchisor engaged in numerous related party

transactions. Prior Franchisor distributed over $200,000 to its members in 2013 and

$74,000 in 2014. Upon information and belief, Prior Franchisor made distributions

to it members in 2015.

199.    Upon information and belief, Prior Franchisor made the transfers described *supra*

with the actual intent to hinder, delay, or defraud Plaintiffs and other franchisees in

the pursuit of their claims against Prior Franchisor.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## THIRTEENTH CLAIM FOR RELIEF
### (Fraudulent Transfer Against Plaintiff, KeyCorp, and Gigi's Operating Pursuant to Tennessee Code § 66-3-305)

200.  Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

201.  KeyCorp executed an Asset Purchase Agreement with Prior Franchisor on May 3, 2016 whereby KeyCorp acquired substantially all Prior Franchisor's assets.

202.  Gigi's Cupcakes, LLC, a wholly-owned subsidiary under KeyCorp's control, now possess substantially all the assets KeyCorp purchased from Prior Franchisor.

203.  Upon information and belief, Gigi's Cupcakes, LLC did not provide adequate consideration to KeyCorp for those assets.

204.  In the alternative, and upon information and belief, KeyCorp transferred the assets to Gigi's Operating, and Gigi's Operating then transferred the assets to Gigi's Cupcakes, LLC.  Gigi's Operating did not provide adequate consideration to KeyCorp for those assets, and Gigi's Cupcakes, LLC did not provide adequate consideration to Gigi's Operating for those assets.

205.   Pursuant to the express direction of Gigi's Cupcakes, LLC and KeyCorp, the Gigi's Cupcakes franchise system does not have enough financial support to sustain operations.

206.   Upon information and belief, KeyCorp transferred the purchased assets to Gigi' Cupcakes, LLC, or in the alternative to Gigi's Operating who then transferred the assets to Gigi' Cupcakes, LLC, with actual intent to hinder, delay, and defraud Plaintiffs in pursuit of their claims against KeyCorp.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### FOURTEENTH CLAIM FOR RELIEF
**(Fraudulent Transfer Against Gigi's Cupcakes, LLC, KeyCorp, FundCorp, FBS, and Sovrano Pursuant to Tennessee Code § 66-3-305)**

207.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

208.   Gigi's Cupcakes, LLC sustained losses from its operations from June 2 through December 25, 2016, and Gigi's Cupcakes, LLC's management was unsure of how Gigi's Cupcakes, LLC would meet its obligations in the ordinary course of business. Further, by June 9, 2017, Gigi's Cupcakes, LLC's financial health left it uncertain if it could provide support and services to its franchisees, including Plaintiffs.

209.    Pursuant to the express direction of Gigi's Cupcakes, LLC and KeyCorp, the Gigi's Cupcakes franchise system does not have enough financial support to sustain operations.

210.    On or about December 25, 2016, Gigi's Cupcakes, LLC was operationally insolvent by at least $360,000.

211.    During the June 2 through December 25, 2016 period, Gigi's Cupcakes, LLC entered into many related party transactions. Specifically, Gigi's Cupcakes, LLC paid FundCorp a $500,000 loan fee for FundCorp's guarantee of Gigi's Cupcakes, LLC's long-term debt and $51,136 for rent of property, Gigi's Cupcakes, LLC paid KeyCorp $105,000 in management fees, and Gigi's Cupcakes, LLC paid FBS $783,695 for "general and administrative services, including payroll serves." Gigi's Cupcakes, LLC also owes Sovrano $46,867 for payments Sovrano made to FBS for services it shared with Gigi's Cupcakes, LLC.

212.    Upon information and belief, the related entities mentioned in the previous Paragraph did not provide reasonably equivalent value in exchange for Gigi's Cupcakes, LLC's payments.

213.    Upon information and belief, Gigi's Cupcakes, LLC made the transfers described *supra* with the actual intent to hinder, delay, or defraud Plaintiffs and other franchisees in the pursuit of their claims against Gigi's Cupcakes, LLC.

214.  Further, Gigi's Cupcakes, LLC was and is engaged in business and transactions with its franchisees for which its remaining assets are unreasonably small in relation to the business and transactions.

215.  Upon information and belief, Gigi's Cupcakes, LLC intended to incur debts beyond its ability to pay as they became due. In the alternative, Gigi's Cupcakes, LLC reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### FIFTEENTH CLAIM FOR RELIEF
**(False & Misleading Statements Against all Defendants
Under Tex. Bus. & Com. Code Ann. § 51.301)**

216.  Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

217.  Defendants employed representations, devices, schemes or artifices to deceive Plaintiffs as purchasers.

218.  Defendants made untrue statements of material fact or omitted to state one or more material facts in connection with the documents and information required to be provided to the secretary of state or purchaser.

219.   Defendants represented that the business opportunity provided, or would have provided, income or earning potential without:

   a.   documented data to substantiate the representation of income or earning potential; and

   b.   disclosure of such data to the purchaser when the representation was made; or

220.   Defendants made claims or representations that were inconsistent with the information required to be disclosed by Tex. Bus. & Com. Code Ann. Chapter 51 in:

   a.   advertising or other promotional material; or

   b.   an oral sales presentation, solicitation, or discussion between Prior Franchisor and Plaintiffs.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

### SIXTEENTH CLAIM FOR RELIEF
**(Deceptive Trade Practices Against all Defendants Pursuant to Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.46)**

221.   Plaintiffs hereby reallege and reassert all preceding Paragraphs of this Original Complaint and Jury Demand as if fully set forth herein.

222.   Plaintiffs are consumers pursuant to Tex. Bus. & Com. Code Ann. § 17.50.

223.   Defendants violated the Deceptive Trade Practices Act ("DTPA") by

    a.  causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; and

    b.  failing to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

WHEREFORE Plaintiffs pray for the relief described at the conclusion of this Original Complaint and Jury Demand.

## V. <u>PRAYER</u>

WHEREFORE, Plaintiffs pray that this Court enter its Judgment awarding Plaintiffs the following relief against the Defendants:

    a.  An Order declaring the respective rights between the parties relating to all matters set forth in the Original Complaint and Jury Demand;

    b.  An Order rescinding the UFA;

    c.  An Order rescinding the Termination Agreement;

    d.  Compensatory, consequential, and incidental damages;

    e.  Punitive damages;

f.   Plaintiffs' attorneys' fees and costs in this matter including expert witness

fees, if any;

g.   Pre- and post-judgment interest on all amounts due and owing to Plaintiffs,

including attorney's fees, if applicable; and

h.   Such other and further relief as this Court deems just and proper.

## VI.  <u>JURY DEMAND</u>

Plaintiffs request that a jury resolve all issues in this case properly triable before a jury.

DATED: September 7, 2018                      Respectfully submitted,

FERGUSON, BRASWELL,
FRASER, KUBASTA, PC

By:     */ s / James E. Davis*
James E. Davis, #05504200
2500 Dallas Parkway, Suite 600
Plano, Texas 75093
Tel: (972) 378-9111
Email: jdavis@fbfk.law

COHEN, LLC

By:     */s/ Jeffrey Cohen*
Jeffrey Cohen, Esq., #10876
Anthony Garcia, Esq., #49481
Colorado State Bank Building
1600 Broadway, Suite 1660
Denver, Colorado 80202
Tel: (303) 524-3636
Email: jcohen@cohentrial.com
Email: agarcia@cohentrial.com
**Attorneys for Plaintiffs**